**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FLORENCE SMITH** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10 C 2789** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Claimant Florence Smith ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner") denying Claimant's application for Disability Insurance Benefits ("DIB"). In response, Defendant filed a motion to affirm the Commissioner's decision. Claimant raises the following issues in support of her motion for summary judgment: (1) whether the ALJ obtained a valid waiver of Claimant's right to representation; (2) whether the ALJ developed a full and fair record; (3) whether the ALJ properly assessed several pieces of medical evidence in her residual functional capacity discussion; and (4) whether the ALJ properly assessed Claimant's credibility. For the reasons explained below, the Court denies Claimant's motion and affirms the Commissioner's decision.

# I. BACKGROUND FACTS

## A.    Procedural History

Claimant initially filed for DIB on July 29, 2008, alleging a disability onset date of December 31, 2007. R. 92–95. The Social Security Administration ("SSA") initially denied the claim on October 21, 2008. R. 58–62. Claimant then filed a request for reconsideration, which the SSA denied on December 22, 2008. R. 63–64. Claimant requested a hearing before an ALJ on February 19, 2009. R. 69–70.

On July 23, 2009, Administrative Law Judge Janice Bruning (the "ALJ") presided over a hearing in which Claimant, her husband, and vocational expert Michelle M. Peters testified. Claimant appeared and testified without the assistance of an attorney, and no medical expert testified. R. 35–55. The ALJ issued a decision on September 16, 2009, finding Claimant not disabled under the Social Security Act. R. 21–34. Specifically, the ALJ found Claimant had the residual functional capacity ("RFC")[1] to perform light work with a sit/stand option and could as a result perform a significant number of jobs in the national economy. R. 27, 29.

Claimant then requested review of this decision. The Appeals Council denied review on March 10, 2010, making the ALJ's decision the final decision of the Commissioner. R. 1–3. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

---

[1] The RFC is the most that a claimant can do despite the effect of her impairments. 20 C.F.R. § 404.1545(a).

**B.      Hearing Testimony—July 23, 2009**

**1.      Florence Smith—Claimant**

Claimant appeared at her hearing without representation.  The ALJ spoke to Claimant about her right to representation, instructing Claimant that counsel could help her obtain information about her claim and explain proceedings to her.  R. 38–40.  The ALJ told Claimant an attorney would not be able to charge a fee unless authorized by the SSA and informed her that qualifying individuals may receive free representation from legal services organizations.  R. 38.   The ALJ said that she would help Claimant obtain medical records if Claimant chose to proceed without counsel.  *Id.*  Claimant said she understood her right to representation and wished to continue with the hearing.  R. 38–39, 40–41.  Claimant's husband expressed concerns about procuring medical records dating back to a 1979 surgery, but the ALJ assured him that she was concerned only with Claimant's more recent health.  R. 38–40.

Claimant first described her background and work history.  At the time of the hearing, Claimant was fifty-two years old.  R. 92.  Claimant stood 5'4" tall, weighed around 178 pounds, and lived at home with her husband.  R. 41.  She attended some college classes and has a real estate broker's license.  *Id.*  Claimant previously worked as an environmental technician.  R. 107.  She has not worked since December 31, 2007, her alleged disability onset date.  R. 42.  Claimant testified that she had been having a lot of problems with her hands and legs, and that she had been on a lot of medicine at the time.  R. 42–43.  Because she was sore and "down" all the time, she decided to stop working.  R. 43.  Additionally, she

frequently felt sick as a result of her medications. *Id.* Because she did not know which medications were helping her, she decided to stop taking all of them. *Id.*

Claimant also testified to her physical limitations. She can walk for about a block before her leg becomes painful, and she only climbs the stairs every few days. R. 45. When asked how much she was able to lift, Claimant responded that she did not know, but that she could lift a gallon of milk. *Id.* Before she stopped working, Claimant had to lift fifty-pound coolers. *Id.* She did not think she would have a problem bending, reaching or balancing, but she had not tried to crouch or crawl. R. 46. Her leg problems are worse when she is cold. R. 45–46. Her right leg is always swollen, and she elevates her legs at chair level as much as possible. R. 44. When she stands, she puts most of her weight on her left leg. *Id.* Claimant also has problems with her hands. R. 46. Her hands often become tender and sore, and are painful and numb when she is cold. *Id.* When her hands are painful, it hurts to touch things, and sometimes she is unable to pick things up. *Id.*

Finally, Claimant testified about the effects of her ailments on her daily activities. She does not have any difficulty with personal care, such as getting dressed or taking a shower. R. 47. She sleeps poorly at night, and can lie for hours without sleeping. *Id.* Claimant occasionally cooks breakfast, but her husband cooks most of the time. R. 47–48. She can do laundry. R. 48. Claimant does not often perform housework like vacuuming or dusting, and does no outdoor work like gardening or shoveling snow. R. 48–49. She drives short distances every two to three days to visit Walmart or Walgreens, but she never carries heavy bags. R. 47. Claimant talks on the phone to friends and family, but not for prolonged

periods of time, and she does not belong to any social organizations. R. 49. She has a computer and can sit for about an hour, but it bothers her fingers to use the keyboard. R. 49–50. Some days her fingers are in so much pain she does not use the computer at all. R. 50. Claimant has decreased her participation or ceased participating in some of her former hobbies, such as sewing, fishing, and bowling. *Id.*

### 2. Mr. Smith—Claimant's husband

Claimant's husband testified that Claimant's chronic problems began in 1979, following an operation. R. 50–51. After that operation, he observed a decrease in Claimant's ability to do all normal activities at home. R. 51.

### 3. Michelle Peters—Vocational Expert

The Vocational Expert ("VE") first described Claimant's past relevant work. R. 51–52. Claimant worked as an environmental technician, or a water tester, which is defined as a semiskilled occupation light in physical demand, although Claimant performed the position with a medium physical demand. *Id.* None of the skills Claimant used in this occupation are transferable to sedentary work. *Id.*

The ALJ then posed several hypothetical questions to the VE. First, she asked whether a person with Claimant's age, education, and work experience could perform any job, including Claimant's past relevant work, if the person could lift twenty pounds occasionally and ten pounds frequently; could stand and/or walk a total of six hours during an eight-hour work day; could sit at least six hours during the eight-hour work day; could never climb ladders, ropes, or scaffolding but occasionally climb ramps or stairs; and could

occasionally balance, stoop, crouch, kneel, or crawl, while avoiding concentrated exposure to cold.  R. 52.

The VE responded that such a person could not perform Claimant's past relevant work, but could perform other types of work, such as cashiering, information clerking, and assembly positions, all of which are readily available in the job market.  *Id.*  The ALJ then asked whether these positions would be available if the individual needed the option to sit or stand at will.  *Id.*  The VE testified that such an individual would not be able to perform cashiering jobs, but that the person would still be eligible for about 1,800 assembly positions; 1,500 hand packaging positions; and 1,200 information clerking positions.  R. 52–53.  The Dictionary of Occupational Titles ("DOT") does not address sit/stand options, but the VE cited as a basis for her numbers "my experience performing direct job placement services, labor market surveys, and video tape job analysis for the last 14-1/2 years."  R. 53–54.

The ALJ also asked whether an individual could perform Claimant's past relevant work if the individual was Claimant's age and had her education and work experience; could lift ten pounds occasionally and less than ten pounds frequently; could stand and/or walk a total of two hours of an eight-hour work day; and could sit at least six hours in an eight-hour work day.  R. 53.  The VE responded that such an individual could not perform Claimant's past relevant work.  *Id.*  The ALJ modified the hypothetical, asking if there would be any work if the individual needed to be off-task twenty percent of the time due to pain and discomfort.  *Id.*  The VE responded that there would be no work for this individual.  *Id.*

## C.    Medical Evidence

### 1. Leg Impairment

Claimant has a long history of problems with her right leg, which began in 1979 with an ankle fracture. R. 239. Claimant related to examining physician Dr. Mahesh Shah that she saw a doctor in 1979 about a lump in her lower right leg. R. 341. Surgery revealed that Claimant had developed an AV malformation, an abnormal cluster of blood vessels, in her right leg. *Id.* Claimant subsequently suffered persistent swelling (edema) and an ulcer in her right leg. R. 191. Claimant has also suffered from cellulitis, a bacterial infection, in this leg. R. 260.

Claimant checked into Elmhurst Memorial Hospital on May 13, 2008, complaining of severe burning pain and extreme swelling of her right leg following a sixteen-hour car trip to Georgia. R. 239. Her leg was warm and tender to the touch, and an arteriogram revealed a series of AV malformations, for which Claimant received Tylenol 3 for pain and was directed to elevate her right leg when sitting. R. 239–40. In a follow-up visit, Claimant related that she felt better, and swelling and pain had both decreased. R. 281. Claimant wore compression stockings and reported that she continued to elevate her leg when she could. R. 282.

### 2. Wrist/Hand Impairment and Rheumatoid Arthritis

On August 5, 2005, Claimant was diagnosed with slight bilateral carpal tunnel syndrome and directed to start wearing wrist splints. R. 189. Claimant received prednisone and aspirin for bilateral hand and wrist swelling, pain, and numbness. R. 198. Her doctors noted a positive Tinel's sign, a sensation of tingling, over the median nerves of both wrists.

R. 191. By February 2, 2006, one of Claimant's doctors opined that she should be able to work, though perhaps with some restrictions for her swollen hands. R. 296. On August 4, 2006, Claimant reported significant reduction in hand pain after completing occupational therapy. R. 295. Claimant assessed her pain as a one out of ten without any medication. *Id*. Her doctor noted rheumatoid arthritis in Claimant's knee and wrist, but described her arthritic flares as "improved." *Id*. At this point, Claimant was not taking any medications for her carpal tunnel or her arthritis, and her doctor decided to hold off on further treatment for her "quiescent" condition. *Id*.

### 3. Dr. Mahesh Shah—State Examining Physician

Dr. Mahesh Shah performed an examination on behalf of the Bureau of Disability Determination Services on September 15, 2008. R. 341. Dr. Shah reported that Claimant was able to move around the office and change postural positions without difficulty. R. 342. Dr. Shah noted that Claimant's lower right leg was much larger than the left leg but found Claimant's leg condition "almost asymptomatic." R. 344. Claimant had full range of motion in all her joints, which were neither swollen nor deformed. R. 343. Claimant had a normal gait and could squat. *Id*. Her handgrip, finger grasps, and both fine and gross manipulations were normal. *Id*. Overall, Dr. Shah classified his examination for both carpal tunnel syndrome and rheumatoid arthritis as unremarkable, and noted that Claimant's only current medication was Tylenol. R. 341, 344.

### 4. Dr. Virgilio Pilapil—Non-Examining Physician

Dr. Virgilio Pilapil performed an RFC assessment for the SSA. R. 345–52. He found Claimant able to stand or walk for six hours in an eight-hour workday; able to lift twenty pounds occasionally and ten pounds frequently; and able to occasionally climb ramps or stairs but never ropes, ladders, or scaffolds. R. 346–47. He found Claimant able to push and pull; able to bend, stoop, crouch, and crawl; and free of manipulative limitations, but advised that Claimant needed to avoid concentrated exposure to extreme cold. R. 346–49. Dr. Pilapil found Claimant's alleged symptoms and limitations only partially credible, because Claimant's exam did not reveal any significant limitations. R. 350.

## D.     The ALJ's Decision—September 16, 2009

After a hearing and review of the medical evidence, the ALJ determined Claimant had the RFC to perform a significant number of jobs in the national economy. R. 27–30. The ALJ therefore found Claimant not disabled from December 31, 2007 to the date of decision, and denied her application for DIB. R. 30. The ALJ evaluated Claimant's application under the required five-step sequential analysis. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since December 31, 2007, the alleged onset date. R. 26. At step two, the ALJ determined that Claimant had the severe impairment of rheumatoid arthritis, but that Claimant's carpal tunnel syndrome, fibroid uterus, and back pain were not severe impairments. R. 26–27. At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 27 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). The ALJ proceeded to determine Claimant's RFC and found Claimant capable of performing light work, with no

climbing of ropes, ladders, or scaffolds; occasional climbing of ramps and stairs, as well as occasional balancing, stooping, kneeling, crouching, and crawling; avoidance of concentrated exposure to cold; and a sit/stand option at will. *Id.*

After considering the evidence, the ALJ found Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible "to the extent they are inconsistent" with the RFC assessment. R. 28. The ALJ relied on Claimant's examination by Dr. Shah, who found Claimant had no problems moving around the office, observed full range of motion in all extremities, and found Claimant's rheumatoid arthritis and carpal tunnel syndrome to be unremarkable. *Id.* Dr. Shah found Claimant's leg impairment nearly asymptomatic, aside from enlargement of the right leg. *Id.* The ALJ noted the medical records did not support Claimant's allegation that she was medically required to elevate her leg. *Id.*

At step four, the ALJ found Claimant could not perform her past relevant work as an environmental technician. R. 29. At step five, the ALJ found that Claimant could perform a significant number of jobs in the national economy, including information clerk, hand packager, and assembler. R. 30. Therefore, the ALJ concluded that Claimant was not disabled under the Social Security Act. *Id.*

## II. LEGAL STANDARDS

### A.     Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether

substantial evidence supports the findings. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739–40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to perform her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i–v). The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that

other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of her motion: (1) whether the ALJ obtained a valid waiver of Claimant's right to representation; (2) whether the ALJ developed a full and fair record; (3) whether the ALJ properly assessed several pieces of medical evidence in her RFC discussion; and (4) whether the ALJ properly assessed Claimant's credibility.

**A.      Claimant Waived Her Right to Representation.**

A claimant has a statutory right to legal counsel at a disability hearing.  42 U.S.C. § 406(c); 20 C.F.R. § 416.1500; S.S.R. 79-19.  In the Seventh Circuit, a claimant may validly waive that right, provided the Commissioner explains to the *pro se* claimant: (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney's fees to twenty-five percent of past due benefits and required court approval of the fees.  *Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)).   In *Thompson*, the Seventh Circuit found waiver invalid because the written notice in that case was "not easily decipherable" as to the twenty-five percent limit on fees, and the claimant expressed a belief at the hearing that he would have to pay money to retain counsel.  933 F.2d at 584–85.

A statutory notice requirement also exists.  It reads:

> The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. § 406(c); 42 U.S.C. § 1383(d)(2)(D).  The statutory notice requirement thus mandates a more limited written disclosure, to accompany the notice of adverse decision.  The Seventh Circuit's standard is a judicially-created test that developed in the circuits before the statutory notice requirement took effect on June 1, 1991.  *See Lamay v. Comm'r*

*of Social Sec.*, 562 F.3d 503, 507–08 (2d Cir. 2009). *Thompson* adopted this standard for the

Seventh Circuit just two days before the relevant statutory provision came into effect,[2] and

later circuit precedent does not address the seeming change in law. *See Thompson*, 933 F.2d

at 581; *Binion,* 13 F.3d at 245 (relying on *Thompson* without discussing the statutory

standard). Meanwhile, at least two other courts of appeals have held that the statutory notice

requirement abrogated the stricter test still used in this circuit. *See Lamay*, 562 F.3d at 508;

*Roberts v. Comm'r of the Social Sec. Admin.*, --- F.3d ---, 2011 WL 1998337, at *2 (9th Cir.

2011).

Here, the Commissioner properly informed Claimant of her right to counsel, even

under the Seventh Circuit's enhanced standard. Claimant argues that the ALJ's conversation

with Claimant failed to meet the standard, and that may be, but the Commissioner also sent

Claimant written information about her right to representation at least three times: with the

notice of disapproved claim; with the acknowledgment of Claimant's request for a hearing;

and with the notice of hearing. R. 60, 73–76, 82–83. Claimant signed a receipt for the notice

of hearing. R. 88. That notice included a two-page document entitled "Your Right to

Representation" that meets all three elements of the *Thompson* test. It contains a list of five

ways in which a representative may aid a claimant. R. 82. It also explains the possibility

of free counsel or a contingency arrangement: "Some organizations can help you find an

attorney or give you free legal services if you qualify. Some representatives do not charge

_____

[2] *Thompson* was decided on May 30, 1991 and amended (though it is unclear how) on June 17, 1991. 933 F.2d at 581.

unless you receive benefits." *Id.* Finally, the document makes clear that a representative cannot charge a fee without SSA approval and that the agency will only approve a fee agreement if "[t]he fee you agreed on is no more than 25 percent of past-due benefits or $5,300, whichever is less." R. 82–83. In contrast to *Thompson*, the written notice here reviewed all of the required information in plain English, so it was valid. Also in contrast to *Thompson*, Claimant never expressed a misapprehension that she would have to pay out of pocket for representation, and the record contains no other evidence that Claimant's waiver was anything other than knowing and intelligent. R. 38–40. Thus, Claimant waived her right to representation.

**B.      The ALJ Developed a Full and Fair Record.**

Although a claimant bears the burden of proving disability, the ALJ in a Social Security hearing must develop a full and fair record. *Nelms v. Astrue*, 533 F. 3d 1093, 1098 (7th Cir. 2009). When a claimant appears without the assistance of counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. *Id.* The ALJ is required to supplement the record provided by a claimant, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information. *Nelms*, 533 F.3d at 1098. Because courts generally uphold the Commissioner's judgment about how much evidence to gather, "a significant omission is usually required" to merit a finding that the ALJ failed to develop a full and fair record. *Id.* "In other words, the omission must be prejudicial." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Claimant argues that the ALJ failed to develop a full and fair record by (1) insufficiently questioning Claimant about her limitations, (2) failing to obtain an opinion from Claimant's treating physician about Claimant's limitations, and (3) inadequately questioning the VE.

### 1. The ALJ Properly Elicited Relevant Information from Claimant.

Claimant first argues that the ALJ failed to elicit relevant information from her during the administrative hearing. Claimant contends that the ALJ did not allow her to meaningfully respond to questions and insufficiently questioned her about her specific limitations. The Court disagrees. The ALJ adequately questioned Claimant about her pain, daily activities, and physical limitations. For instance, although Claimant contends the ALJ failed to explore her alleged hand impairments, the ALJ did ask Claimant what happens with her hands when they hurt and how her symptoms affect the use of them. R. 46. The ALJ also asked Claimant about problems with reaching, and the ALJ's questions about Claimant's daily activities provided information about the extent of her limitations, such as using a computer keyboard. R. 49–50. The ALJ gave Claimant ample opportunity to testify to her alleged physical limitations and her daily activities, probing areas such as personal care, household chores, shopping, and social activities. R. 47–50.

## 2. The ALJ Was Not Required to Contact Claimant's Treating Physician.

Second, Claimant argues that the ALJ failed to supplement the record by declining to contact Claimant's treating physician. But the ALJ need not solicit additional medical evidence unless the record contains insufficient information to determine whether a claimant is disabled. 20 C.F.R. § 404.1527(c)(3). Here, the ALJ had ample information to make a disability determination, including Claimant's testimony and medical records, the examination by Dr. Shah, and an RFC assessment by Dr. Pilapil. Besides, Claimant fails to explain how the supposed gap in evidence prejudiced her. Neither Claimant nor her attorney submitted any additional information from Claimant's treating physician to the Appeals Council or this Court, and Claimant provides no specifics about how the doctor could help her case.

## 3. The ALJ Properly Questioned the Vocational Expert.

Third, Claimant contends that the ALJ failed to develop a full and fair record by inadequately examining the VE. Concerning the hypothetical that called for light work with a sit/stand option, Claimant maintains the ALJ erred by failing to double-check with the VE that her response truly referred to light rather than sedentary work. Claimant also questions whether light work is possible with a sit/stand option. Claimant notes that she would automatically be considered disabled if limited to sedentary work, under the "grids" of the Medical Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Claimant's argument is unavailing, however, because the ALJ properly relied on VE testimony. When a claimant's RFC falls between exertional levels, the grids no longer direct an outcome. *Haynes*, 416 F.3d 621, 628 (7th Cir. 2005). Although the ALJ should still use the grids as a framework, consultation with a VE will often be required. *See id.* Light work with a sit/stand option presents just such a situation. *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). Many, but not all, light jobs lack the option to sit or stand at will, so an ALJ faced with this RFC must obtain VE testimony about whether significant light jobs exist that accommodate a claimant's peculiar sit/stand limitations. *Id.* (relying on S.S.R. 83-12). Here, the ALJ did just that in the hypothetical at issue. The VE testified that the number of jobs Claimant could perform decreased with a sit/stand option, but that roughly 4,500 jobs were still available to Claimant. R. 53. The reduction in jobs did not suggest that Claimant was limited to sedentary work, but rather that her need for a sit/stand option limited the number of light jobs available. Given that the hypothetical expressly posited a light exertional level, the ALJ had no reason to suspect that the proposed limitations would confine Claimant to sedentary work.

Claimant further contends that the ALJ improperly adopted the VE's statistics regarding light work with a sit/stand option, because the VE's testimony was based on her personal experience. Because an ALJ's findings must be supported by substantial evidence, the ALJ may only accept reliable expert testimony. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2003). A VE may provide statistics beyond those listed in the DOT, but "a [VE], relying on personal experience, without any citation of objective reports or documents,

must provide some specificity concerning the facts, figures, or other data that form the basis of his testimony." *Smith v. Astrue*, No. 09 C 2392, 2010 WL 3526655, at *17 (N.D. Ill. Sept. 1, 2010). Moreover, "the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*, 368 F.3d at 911.

Here, the ALJ adequately questioned the VE about the basis for her job numbers. The ALJ asked if the VE's testimony was consistent with the DOT, and the VE responded that her job numbers regarding light work with a sit/stand option came from "personal experience performing direct job placement services, labor market surveys, and video tape job analysis for the last 14-1/2 years." R. 53–54. The ALJ then asked the VE if her testimony accurately reflected the jobs in the national economy, and the VE responded that it did. R. 54. Perhaps Claimant could have forced the VE to provide a written report substantiating her statistics, see *McKinnie*, 368 F.3d at 911, but it does not follow that the ALJ had to do so. The ALJ's duty to develop the record does not require that the ALJ advocate for a claimant in the most zealous manner imaginable. Here, the testimony elicited was sufficient to develop a full and fair record, because the VE identified a facially valid basis for her statistics, specifically indicating the methods used to develop the numbers. The ALJ was not obliged to press the VE for further proof.

**C.      The ALJ Adequately Discussed the Medical Evidence.**

Claimant also attacks the ALJ's RFC finding, based both on the discussion of the medical evidence and the credibility determination.  An RFC finding must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must use objective evidence to make a reasonable conclusion about the intensity and persistence of a claimant's symptoms and the effect those symptoms may have on a claimant's ability to work.  *Id*. When an ALJ denies benefits, the denial must rest "on adequate evidence contained in the record and must explain why contrary evidence does not persuade."  *Id*.

Claimant attacks the ALJ's analysis of the medical evidence on several grounds. First, Claimant argues the ALJ failed to adequately address Claimant's need to elevate her right leg.  Second, Claimant maintains the ALJ failed to include limitations on Claimant's use of her hands in the RFC analysis.   Third, Claimant argues the ALJ failed to consider the aggregate effect of Claimant's ailments, including her carpal tunnel syndrome and back impairment.

Claimant's first argument, that the ALJ did not address her need to elevate her right leg, is unsubstantiated.  Claimant was instructed to elevate her leg at her emergency hospital visit following a sixteen-hour car ride, but the record lacks evidence that Claimant needed to continue elevating the leg.  The doctor at a follow-up visit merely reported that Claimant had been elevating her leg when possible.   And Dr. Shah's examination revealed that although Claimant had an AV malformation in her enlarged right leg, her leg was "almost

asymptomatic." R. 343.  Claimant walked around Dr. Shah's office without difficulty and had normal strength in both legs.  *Id*.  This medical evidence does not suggest that Claimant is medically required to elevate her leg.

Claimant's second argument, that the ALJ failed to include Claimant's problems with her hands in the RFC analysis, is equally problematic.  Although Claimant has been diagnosed with rheumatoid arthritis, she took no medication to control it as of 2008.  R. 341.  In Dr. Shah's exam, Claimant had full range of motion in all of her joints without any joint swelling; her handgrip and finger grasps were normal; fine and gross manipulations were normal; and Claimant had normal strength in all of her extremities.  R. 341, 343.  Dr. Shah found her rheumatoid arthritis unremarkable.  R. 344.  In treatment notes from August 4, 2006, another doctor noted that Claimant, after finishing prescribed occupational therapy, had significant improvement with her hand pain, ranking it as only one out of ten in severity.  Claimant reported feeling relatively happy with her state, and the doctor decided no further treatment was necessary for her "quiescent" condition.  R. 295.  The record lacks evidence of further treatment for hand pain.  Although rheumatoid arthritis is a condition in which temporary and temporally distinct flare-ups may occur, there is no indication in the medical evidence that Claimant suffered from significant flare-ups.  The ALJ was entitled to credit contradictory medical evidence over Claimant's testimony.  Substantial evidence supports the ALJ's RFC finding, which took into account Claimant's need to avoid exposure to cold temperatures to decrease her hand pain.

Third, Claimant argues that the ALJ failed to consider the combined effects of her impairments when determining her RFC. She asserts that the ALJ failed to consider her back pain and carpal tunnel syndrome, both non-severe impairments, in her RFC assessment. When making an RFC determination, the ALJ must consider the combined effect of all ailments, even those that are not severe when considered separately. *See* 20 C.F.R. § 404.1523. The ALJ must take into account all symptoms, including pain. 20 C.F.R. § 404.1529(a). That said, the ALJ must also consider whether the alleged symptoms "can reasonably be accepted as consistent with the objective medical evidence." *Id.*

Here, the ALJ was not required to address Claimant's non-severe impairments in the RFC finding, because she validly found that the objective medical evidence did not reveal functional limitations. First, Dr. Shah found Claimant's carpal tunnel syndrome "unremarkable." R. 341. Claimant completed occupational therapy for her hands in 2006 and began wearing wrist splints for her carpal tunnel, after which Claimant said she was improved, with almost no pain. R. 295. This was more than a year before the alleged disability onset date. Claimant's back pain also occurred before the alleged onset date. Claimant resolved her back pain with physical therapy, and the record lacks evidence of later back pain, nor did Dr. Shah find any abnormalities in Claimant's back during his examination. R. 292, 343. Because these impairments caused no functional limitations during the alleged disability period, the ALJ was not required to address them in the RFC analysis.

**D.      The ALJ Properly Assessed Claimant's Credibility.**

Finally, Claimant argues that an invalid credibility determination undermined the RFC finding. An ALJ's credibility determination is accorded a special degree of deference because the ALJ is in the best position to evaluate credibility. Thus, an ALJ's credibility finding is overturned "only if it is so lacking in explanation or support that [it is] patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The ALJ's decision must contain specific reasons for the credibility finding, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Brindisi ex. Rel Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (citing S.S.R. 96-7p).

Claimant argues that the ALJ erred by providing only a conclusory credibility finding. The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her allegations about her symptoms and their effects were not credible to the extent that they conflicted with the RFC assessment. R. 28. Claimant contends this generic language renders the ALJ's determination patently wrong because it lacks the specificity required by S.S.R. 96-7p. In other words, the ALJ's statement was a conclusion, but the ALJ was required to back up the conclusion with an adequate explanation. Claimant argues that the ALJ failed to address why her testimony about her symptoms was not credible.

The ALJ's credibility discussion was not perfect, but the ALJ did provide adequate reasons for her finding. She summarized medical evidence from Dr. Shah and Dr. Pilapil,

highlighting findings that contradicted Claimant's testimony about her symptoms and functional limitations. R. 28. The ALJ explicitly stressed that the medical evidence contradicted Claimant's alleged need to elevate her leg. *Id*. The ALJ also explained that although she afforded greater weight to the reviewing physician, she gave Claimant the benefit of the doubt that rheumatoid arthritis would require postural limitations and a sit/stand option. R. 28–29.

The Court agrees with Claimant that the ALJ could have written her credibility finding more artfully, for instance by drawing clearer lines between Claimant's statements and contradictory medical evidence. Instead, the ALJ summarized Claimant's testimony in one paragraph and the contradictory evidence in another. But the credibility determination was clear enough to permit meaningful review, and Claimant has failed to identify any substantive errors that merit a remand. The credibility finding was not patently wrong.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court denies Claimant's motion for summary judgment, grants the Commissioner's motion to affirm, and affirms the Commissioner's decision.

SO ORDERED THIS 21st DAY OF JUNE, 2011.

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies Sent To:**

Barry Alan Schultz
James Schiff
Law Offices of Barry Schultz
1601 Sherman Avenue
Suite 510
Evanston, IL 60201

Counsel for Plaintiff

Abigail Lynn Peluso
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Rachel C. Steiner
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, Suite 3000
Chicago, Illinois 60606

Counsel for Defendant